IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

JEFFREY T. LINDENMUTH

        Plaintiff,

v.                                              CIVIL ACTION NO.   2:15-cv-13368

LABORATORY CORPORATION OF AMERICA,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jeffrey Lindenmuth brings this action against Defendant Laboratory Corporation of America ("LabCorp") alleging wrongful discharge in violation of the West Virginia Human Rights Act ("WVHRA"). Before the Court is LabCorp's Motion for Summary Judgment. (ECF No. 40.) For the reasons discussed below, the motion is **GRANTED**.

*I.  BACKGROUND*

This action arises out of a complaint brought by Plaintiff Lindenmuth in the Circuit Court of Kanawha County, West Virginia. (ECF No. 1-1.) According to the complaint, Mr. Lindenmuth worked as an employee for LabCorp from 1983 to August 22, 2013. (*Id.* at 5, ¶ 5.) On June 10, 2013, Mr. Lindenmuth underwent surgery to remove a tumor from his kidney. (*Id.* ¶¶ 8, 10.) He returned to work on July 13, 2013, and worked "on light duty" for approximately two weeks before resuming his employment at full capacity. (*Id.* ¶¶ 11–12.) Plaintiff contends that his termination from LabCorp on August 22, 2013, was based upon, in whole or in part, either

1

"[his] disability, perceived disability, and/or being regarded as disabled" or his age, both in violation of the WVHRA and its accompanying regulations. (*Id.* at 6, ¶¶ 18–19.) *See* W. Va. Code §§ 5-11-1, 5-11-3, 5-11-9.

After Plaintiff filed his complaint in Kanawha County Circuit Court on August 19, 2015, (*see* ECF No. 1-1 at 4), LabCorp removed the case to this Court on September 22, 2015, pursuant to 28 U.S.C. § 1441. (*See* ECF No. 1-6.) LabCorp filed this motion for summary judgment and memorandum in support of its motion on May 25, 2016. (*See* ECF No. 41.) Plaintiff responded to LabCorp's motion for summary judgment on June 8, 2016, (*see* ECF No. 42), and LabCorp filed its reply memorandum in support of its motion for summary judgment on June 15, 2016. (ECF No. 44 at 1–2.) The motion is fully briefed and ripe for adjudication.

## II. STANDARD OF REVIEW

Summary judgment is proper where the pleadings, depositions, and affidavits in the record show that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If there exist factual issues that properly can be resolved only by a trier of fact because they may reasonably be determined in favor of either party, summary judgment is inappropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). *See also Pulliam Inv. Co., Inc. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). The moving party bears the burden of showing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322–23. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Id.* The

2

nonmoving party may not avoid summary judgment "by submitting an affidavit that conflicts with earlier deposition testimony." *Alba v. Merrill Lynch & Co.*, 198 Fed. App'x 288, 300 (4th Cir. 2006) (citing *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984)). When determining whether there is an issue for trial, the Court must view all evidence in the light most favorable to the nonmoving party. *Mellen v. Brunting*, 327 F.3d 355, 363 (4th Cir. 2003). The nonmoving party may not rest on the pleadings alone and must show that specific material facts exist by offering more than a mere "scintilla of evidence" in support of his position. *Anderson*, 477 U.S. at 252.

### III. DISCUSSION

The claims put forth in Plaintiff's complaint arise under the WVHRA. Under the WVHRA, no employer may "discriminate against an individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment if the individual is able and competent to perform the services required even if such individual is blind or disabled." W Va. Code § 5-11-9(1). It is unlawful "to exclude from, or fail or refuse to extend to, a person equal opportunities," based on several protected classes, including disability and age.[1] § 5-11-3(h). "Disability" is defined within the Act as "[a] mental or physical impairment which substantially limits one or more of such person's major life activities," including "caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working," or "[b]eing regarded as having such an impairment." § 5-11-3(m)(1), (3).

The WVHRA, like other state laws, is often analyzed under its federal equivalents—the Americans with Disabilities Act ("ADA") and the Age Discrimination in Employment Act

---

[1] The WVHRA defines "age" as "forty or above." W. Va. Code § 5-11-3(k).

("ADEA"), among others.  *See, e.g.*, *Hosaflook v. Consolidation Coal Co.*, 497 S.E.2d 174, 181 n.10 (W. Va. 1997) (noting that "cases decided under the ADA are also helpful in deciding our cases under the [WVHRA]").  This state statute "often correspond[s] with—but sometimes stray[s] from" the federal counterparts.  *Calef v. FedEx Ground Packaging Sys., Inc.*, 343 F. App'x 891, 897 (4th Cir. 2009).  While federal cases interpreting the ADA may be helpful in understanding the WVHRA,[2] *see Andrew O. v. Racing Corp. of W. Va.*, No. 12-1255, 2013 WL 3184641, at *6 (W. Va. June 24, 2013), the Supreme Court of Appeals of West Virginia has noted that the WVHRA "represents an independent approach to the law of disability discrimination that is not mechanically tied to federal disability discrimination jurisprudence."  *Stone v. St. Joseph's Hosp. of Parkersburg*, 538 S.E.2d 389, 404 (W. Va. 2000).  *But see id.* at 408–10 (Scott, J., concurring) (disagreeing with the majority's portrayal of the relationship between the WVHRA and the ADA, stating that "the pattern and practice of this Court have been to follow the federal courts' interpretation of various statutory provisions" when deciding discrimination cases).

The Court will begin with an analysis of Plaintiff's claim that he was wrongfully discharged because of his disability.  Then, it will consider the Plaintiff's claim of age discrimination.  Lastly, it will address the remaining argument within the parties' pleadings that the employer's stated reason for terminating Plaintiff is simply a pretext for either disability and/or

---

[2] LabCorp's note in its brief that Plaintiff's claims, arising under the WVHRA, "are governed by the analytical framework developed under the . . . [ADA and ADEA] . . . and are properly analyzed under the same standards, except where the language of the WVHRA differs from the federal statutes," (ECF No. 41 at 10 n.2), is well taken.  *See, e.g.*, *Barefoot v. Sundale Nursing Home*, 457 S.E.2d 152, 159 (W. Va. 1995), cited in *Papa v. Union Carbide Corp.*, 971 F. Supp. 220, 229 (S.D.W. Va. 1997); *Slivka v. Camden-Clark Mem'l Hosp.*, 594 S.E.2d 616, 620 (W. Va. 2004).
    The WVHRA is often litigated in the disability discrimination context and, therefore, understood by reference to federal cases interpreting the ADA only, but the Fourth Circuit has stated that federal cases may also be used in the context of state age discrimination claims.  *See Miller v. Terramite Corp.*, 114 Fed. App'x 536, 542 (4th Cir. 2004) (noting that the district court "did not commit error by citing federal cases as supporting authority" in an age discrimination claim arising under the WVHRA).

4

age discrimination. To survive summary judgment on his claims, Plaintiff must produce more than a "mere scintilla of evidence" to support a finding that he was wrongfully discharged due to disability or age discrimination.

### A. *Disability Discrimination Claim*

Plaintiff's first claim rests on the assertion that his termination "was based upon, in whole or in part, on [his] disability, perceived disability, and/or being regarded as disabled in violation of the WVHRA and its accompanying regulations." (ECF No. 1-1 at 3, ¶ 18.) To establish a prima facie case of disability discrimination under the WVHRA, Plaintiff must show that (1) he meets the definition of "disabled" within the law's meaning; (2) he is a "qualified disabled person"; and (3) he was discharged from his job. *See, e.g.*, *Hosaflook*, 497 S.E.2d at 178–79.

As noted above, the WVHRA provides a three-prong definition of "disability." The Plaintiff must establish either that he suffered from "[a] mental or physical impairment" substantially limiting one or more of his major life activities, including working; that a record of such an impairment exists; or that he was "regarded as having such an impairment" by his employer. *See* § 5-11-3(m)(1)–(3). This Court has previously distilled the three-part definition down to its essence: (1) the plaintiff "has a physical or mental impairment substantially limiting one or more major life activities (disabled *in fact*); or (2) is either correctly or incorrectly regarded as having an impairment and/or substantial limitation (*regarded as* disabled)." *Ruckel v. Sears, Roebuck & Co.*, 287 F. Supp. 2d 652, 655 (S.D.W. Va. 2003) (quoting *Stone*, 538 S.E.2d at 392) (emphasis added). In this case, however, Mr. Lindenmuth concedes that he did not have a disability in fact. (*See* ECF No. 40-1 at 70 ("Interrogatory No. 6: Is your claim of alleged disability discrimination in this lawsuit based on actual 'disability' that you claim to have?

5

Answer: NO.").)  His claim rests on the argument that LabCorp regarded him as disabled.  (*See* ECF No. 42 at 3–7 ("III.  Mr. Lindenmuth can Establish a *Prima Facie* Case that Defendant *Regarded and/or Perceived Him as* Disabled." (emphasis added))  *See also* ECF No. 40-1 at 4.)

Even if a plaintiff does not claim a disability in fact, he or she may proceed under the premise that the defendant employer regarded him or her as being disabled, whether or not the employer's belief was correct.  *See Ruckel*, 287 F. Supp. 2d at 655.  For purposes of the WVHRA, an employee is "regarded as disabled" if the employer treats him or her "as a person who should not be entrusted with the duties of his [or her] regular job."  *See Garvin v. World Color Printing (USA) II Corp.*, No. 3:10-CV-74, 2011 WL 1485998, at *9 (N.D.W. Va. Apr. 19, 2011) (citing *Stone*, 538 S.E.2d at 406; *Calef*, 343 Fed. App'x at 897).  Because the WVHRA protects employees "who are discriminatorily *treated* as having" the disability, *id.* (quoting *Stone*, 538 S.E.2d at 407 n.25) (emphasis in original), this "regarded as" prong relies on an objective test that focuses on the employer's behavior rather than the subjective motivation behind the behavior.  *See id.*

A "qualified disabled person" is one who is able "to perform essential functions of the job" whether or not he requires reasonable accommodation.  *Skaggs v. Elk Run Coal Co., Inc.*, 479 S.E.2d 561, 573–74 (W. Va. 1996).  *See also* W. Va. Code § 5-11-9.  An employee with a totally disabling condition rendering him or her temporarily unable to fulfill job requirements still can be considered a "qualified disabled person" under the WVHRA.  *See Haynes*, 521 S.E.2d at 344, 344 n.17.  The plaintiff in *Haynes* was advised by her doctor to take leave from work for an indefinite period of time because she suffered from hypertension during her high-risk pregnancy.  *See id.* at 333.  Despite the fact that the plaintiff took work leave for an unknown duration, the Supreme

Court of Appeals of West Virginia nonetheless determined that because she eventually returned to work she was a "qualified disabled person" for the purposes of the WVHRA. *See id.* at 344.

In establishing the third element, the plaintiff should show that the circumstances of the discharge involve at least an inference of discrimination where "that employee was treated less favorably than similarly situated workers who were not in the employee's protected class." *See Skaggs*, 479 S.E.2d at 587–88. One of the plaintiffs in *Hoops* was not able to establish a prima facie case of disability discrimination under the WVHRA because he "fail[ed] to establish the necessary link between [the defendant's] termination decision and his status as a member of the protected class." 95 F. Supp. 2d at 618. Therefore, the defendant employer's actions in that case did not give rise to an inference of unlawful discrimination. *See id.* Mr. Lindenmuth, like other plaintiffs establishing a prima facie case of employment discrimination, must demonstrate at least an inference, link, or motivation, between the defendant's employment decision and his status within the protected class. *See id.* at 617–18. *See also Ruckel*, 287 F. Supp. 2d at 653–54. Simply claiming that termination followed a period of disability is not sufficient to establish the third element. *See, e.g.*, *Smith v. Bayer Material Sci., LCC*, No. 5:12CV171, 2013 WL 4039946, at *1 (N.D.W. Va. Aug. 7, 2013).

Here, Mr. Lindenmuth cannot establish that he meets the definition of "disabled" within the WVHRA beyond a "mere scintilla of evidence." Plaintiff claims that he took four weeks' leave from work to recover from surgery he underwent to remove a tumor from his kidney and that upon his return he spent two weeks on "light duty" before resuming his full employment responsibilities. (*See* ECF No. 1-1 at 2, ¶¶ 8, 10–12; ECF No. 42 at 4.) He does not claim, however, that one of his major life activities, such as working, was substantially limited as required

7

by the "disabled in fact" prong of the definition. (*See* ECF No. 40-1 at 70.) Because Mr. Lindenmuth does not claim that he was "disabled in fact," *see Ruckel*, 287 F. Supp. 2d at 655, his status within the protected class will only be analyzed under the latter, "regarded as disabled," prong. *See id.*

Plaintiff claims within his interrogatories that LabCorp's management staff "regarded him as disabled and unable to perform his job." (ECF No. 40-1 at 4.) When asked repeatedly in his deposition, however, he could not provide any evidence of specific behavior by LabCorp to support this claim:

> Q. Let me phrase it this way. What evidence do you have that any management staff at LabCorp regarded you as disabled and unable to perform your job?
> A. I don't have an answer for that . . .
> Q. Do you have any evidence that any management staff at LabCorp regarded you as disabled and unable to perform your job?
> A. No, I have no evidence.
> Q. Can you identify any member of LabCorp management who you believe regarded you as disabled and unable to perform your job?
> A. No I can't . . .
> Q. Do you believe that [your immediate superior] James Stafford regarded you as disabled and unable to perform your job?
> A. Nope . . .
> Q. What evidence do you have that LabCorp terminated your employment because it regarded you as disabled and unable to perform your job?
> A. Falls back on the X amount of days after it all happened, I'm not there . . .
> Q. Other than what you've already testified about today, are you aware of any other evidence that LabCorp terminated your employment because it regarded you as disabled?
> A. Nope.

(ECF No. 40-1 at 61.) Beyond the illogical reasoning that LabCorp must have regarded Plaintiff as disabled because his termination occurred "X amount of days after it all happened," there are no facts on the record to support this claim. In addition to Mr. Lindenmuth's own statements, the depositions and affidavits of both then-Director of Human Resources Larenda Johnson and Human

8

Resources Manager Gwendolyn Pruitt support the conclusion that LabCorp did not regard Plaintiff as disabled at the time of the employment decision. Ms. Johnson, who made the sole decision to terminate Plaintiff's employment, "did not know that he had been on a medical leave in 2013, that he had had surgery while on that leave, that he had asked for help lifting heavy objects or doing anything else for any length of time when he returned from that leave, or that he had any impairment at all." (ECF No. 40-6 at 3–4, ¶¶ 6–7. *See also* ECF No. 40-2 at 9 ("Q. Are you aware that [Mr. Lindenmuth] was on a medical leave? A. No . . . Q. So you don't remember Mr. Lindenmuth having a surgery? A. No. [A separate employee who may have known] would not report that to me for any employee.").) Ms. Pruitt also testified to lacking any knowledge of a surgery or impairment suffered by Mr. Lindenmuth at the time he was terminated. (*See* ECF No. 40-3 at 13 ("Q. Do you know [Mr. Lindenmuth] had to take a medical leave at some point in time in the summer of 2013? A. I didn't know that at that time, no."); ECF No. 40-8 at 3, ¶ 7.)

In trying to build his "regarded as disabled" claim, Mr. Lindenmuth only provides his own statement that "[m]anagement staff [was] aware of my hospitalization and light duty work." (ECF No. 40-1 at 4.) As revealed above he has provided no support for that proposition. Similarly, the only indication that the plaintiff in *Ruckel* might have been regarded as disabled by his employer was his own set of admissions, and the Court noted that "[t]hose stray comments . . . without any further foundation, amount to at most a scintilla of indirect evidence of an improper motive." 287 F. Supp. 2d at 656. Mr. Lindenmuth provides equally little support, so this Court cannot find any issue of fact as to whether he was "regarded as disabled."

9

Thus, Plaintiff fails to establish that he was "disabled" within the meaning of the WVHRA.³ Even viewing the evidence in the light most favorable to Plaintiff, he fails to establish a prima facie case of disability discrimination.

### B. Age Discrimination Claim

Plaintiff's second allegation is that his termination "was based upon, in whole or in part, on [his] age in violation of the WVHRA and its accompanying regulations." (ECF No. 1-1 at 3, ¶ 19.) To establish a prima facie case of age discrimination under the WVHRA, Plaintiff must show that (1) he was over the age of forty; (2) his employer made an adverse employment decision affecting him; and (3) the adverse decision would not have been made but for his age. *See Miller v. Terramite Corp.*, 114 Fed. App'x 536, 541 (4th Cir. 2004) (following rulings by the Supreme Court of Appeals of West Virginia (citing *Waddell v. John Q. Hammons Hotel, Inc.*, 572 S.E.2d 925, 927 (W. Va. 2002); *Conway v. E. Assoc. Coal Corp.*, 358 S.E.2d 423, 429 (W. Va. 1986)). The Supreme Court of Appeals of West Virginia has "discouraged" the used of the "but for" phrasing in element three in favor of adding a less burdensome "substantial factor" element, *see Barlow v. Hester Indus.*, 479 S.E.2d 628, 645 (W. Va. 1996), which this Court followed in *Mixer v. M.K.-Ferguson Co.*, 17 F.Supp.2d 569, 576 (S.D.W. Va. 1998) (noting that to satisfy the third element the plaintiff must show that "but for his age, the defendants would not have taken the adverse employment action against him, or that his age was a substantial factor in the defendants' decision to take adverse employment action against him"). This Court will assess the third prong under both approaches. "What is required of the plaintiff is to show some evidence which would

---

³ Plaintiff also cannot be considered a "qualified disabled person" under the second prong of the test because he could not meet the requisite definition of "disabled" within the WVHRA. *See Hosaflook*, 497 S.E.2d at 178–79. Despite the fact that he was terminated from his job and thus satisfied the third element, elements one and two of the common law test are not met.

sufficiently link the employer's decision and the plaintiff's status as a member of the protected class so as to give rise to an inference that the employment decision was based on an illegal discriminatory criterion." *Miller*, 114 Fed. App'x at 541 (quoting *Conway*, 358 S.E.2d at 429–30). Thus, to survive summary judgment the plaintiff must provide enough facts to create an inference of discrimination. *See, e.g.*, *id.* (citing *Conrad v. ARA Szabo*, 480 S.E.2d 801, 810 (W. Va. 1996)).

In *Miller*, the plaintiff met the first two elements when attempting to establish his prima facie case of age discrimination: he proved that he was over the age of forty and that the defendant employer laid him off work. 114 Fed. App'x at 541. The court concluded, though, that he provided no evidence supporting an inference of discrimination. *See id.* The "mere fact that younger workers with less seniority were retained" by the company "cannot demonstrate an inference of age discrimination . . . ." *Id.* at 542. Miller did not contest the fact that the replacement employees hired were able to perform every job required by the department. *See id.* Without an inference of discrimination, Miller could not state a prima facie case of age discrimination under West Virginia state law.

Mr. Lindenmuth's situation can be analogized to Miller's in that Plaintiff here also meets the first two elements of the prima facie test for age discrimination. It is undisputed that he was over 40 years old at the time of his termination,[4] and that LabCorp made an adverse employment decision affecting him. (*See* ECF No. 40-6 at 4–5, ¶ 6 (Johnson Aff.) ("I made the decision to terminate Mr. Lindenmuth's employment . . . .").) Nevertheless, like Miller, Mr. Lindenmuth

---

[4] Plaintiff was born on Aug. 29, 1953, (*see* ECF No. 40-1 at 4), and was terminated on Aug. 22, 2013. (*See* ECF No. 40-1 at 70; ECF No. 40-2 at 4 (Johnson Dep.) ("Q. Do you remember [Mr. Lindenmuth's] last day of work? . . . A. Fall of 2013 would be my best recollection.").) Thus, he was 59 at the time LabCorp terminated his employment.

11

fails to provide evidence supporting an inference of age discrimination. Plaintiff's claim is based solely on the fact that he was 59 when terminated and his replacement was 45 when she was hired. (*See* ECF No. 40-1 at 57 (Lindenmuth Dep.) ("Q. So you're basing your age discrimination claim on the fact that you were 59 when you were terminated and your replacement was 45 when they replaced you, correct? A. Yes.").) LabCorp provides evidence, however, that Mr. Lindenmuth was not terminated because of his age but because he was having inappropriate interactions with a female co-worker. (*See, e.g.*, ECF No. 40-3 at 5 (noting that Plaintiff's fraternization became a problem for the company).) After several warnings, including a final warning in which termination was threatened, Mr. Lindenmuth continued to behave in direct contradiction to LabCorp's directive,[6] which led to both employees' termination. (*See* ECF No. 40-6 at 4, ¶ 6.)

LabCorp's decision to terminate Mr. Lindenmuth would have occurred regardless of his age. (*See* ECF No. 40-2 at 8–9.) This fails the third element under the "but for" test, and Mr. Lindenmuth's claim also fails under the "substantial factor" test. Neither party provided evidence that Plaintiff's age played a role in the company's decision. Mr. Lindenmuth fails to supply any

---

[6] *See* ECF No. 40-5 at 20 ("They were both told on numerous occasions to stop communicating, both personal and business on LabCorp property. Both of them ignored, on numerous occasions, this directive . . . ."); ECF No. 40-3 at 18 ("After he told us his story about what was going on with him and Judy, we said, 'Well, you guys were not supposed to be having personal conversations. You have been warned multiple times to not do that and you were also told that it could likely result in termination of employment.' And [Mr. Lindenmuth] acknowledged that he knew and had understood this warning."); ECF No. 40-2 at 8, 9 ("I do know that I asked both Ms. Adkins and Mr. Lindenmuth if . . . they had communicated on company property in violation of their final warnings, and they both said yes . . . [Ms. Adkins and Mr. Lindenmuth] had both violated the terms and conditions of their final warning issued by me.").

    Mr. Lindenmuth contradicts his earlier statements made during his deposition regarding his continued contact with the other employee. After admitting to having contact with the employee after multiple directives not to (*see, e.g.*, ECF No. 40-1 at 39), he later states in his affidavit that "I tried to avoid her and walked away if she tried to talk to me or approach me." (ECF No. 43-7 at 3, ¶ 10.) As the Fourth Circuit noted in both the *Barwick* and *Alba* cases, "A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct. If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Alba v. Merrill Lynch & Co.*, 198 Fed. App'x 288, 300 (4th Cir. 2006) (citing *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984) (quoting *Perma Research & Dev. Co. v. The Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969))).

12

facts that lead this Court to infer that LabCorp discriminated against him because of his age.[7] His argument rests on the basis that "he was 59 when terminated and his replacement was 45," (ECF No. 40-1 at 57), and this alone is not sufficient to create an inference of discrimination. For these reasons, Plaintiff fails to establish that the adverse employment decision would not have been made but for his age or that his age was a substantial factor in the decision. Even viewing the evidence in the light most favorable to Plaintiff, he fails to establish a prima facie case of age discrimination under the WVHRA.

  C. *Pretext for Discrimination*

Plaintiff and LabCorp dispute within their briefing whether Plaintiff can establish pretext as to his discrimination claims. This Court has already determined that Plaintiff cannot establish a prima facie case of discrimination under the WVHRA. Nevertheless, the Court will briefly address this issue.

If a defendant in a WVHRA discrimination action puts forth a nondiscriminatory reason for its behavior, then the plaintiff regains the burden of showing that the articulated reason is a mere pretext for the actual, discriminatory motive, based on a factor such as race, disability, or age.[8] *See Charleston Town Ctr. Co., LP v. W. Va. Human Rights Comm'n*, 688 S.E.2d 915, 920–21 (W. Va. 2009). *See also K-Mart Corp. v. Human Rights Comm'n*, 383 S.E.2d 277 (W. Va. 1989). "Pretext" as it relates to unlawful discriminatory employment practices "means an

---

[7] Plaintiff questions in his brief why he was not discharged in March 2013 if the reason was not his age, (*see* ECF No. 42 at 11 ("Why wasn't he discharged back in March?")), but he answers "yes" in his deposition to the following question: "Despite the warnings you received, the latest being in late March 2013, there were additional occasions where you and Judy Adkins would have personal conversations in the workplace, whether initiated by you or by Judy Adkins, correct?" (ECF No. 40-1 at 44–45.)

[8] This burden-shifting method originated in the United States Supreme Court's decision in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973), as it applies to similar federal discrimination claims, but it has been recognized as applying to the WVHRA. *See Calef*, 343 Fed. App'x at 898–99. *See also Skaggs*, 479 S.E.2d at 582.

ostensible reason or motive assigned as a color or cover for the real reason or motive, or false appearance, or pretense." *Mayflower Vehicle Sys., Inc. v. Cheeks*, 629 S.E.2d 762, 773 (W. Va. 2006). Pretext of this nature may be shown by the plaintiff through several forms of evidence: "(1) comparative evidence, (2) statistical evidence, and (3) direct evidence of discrimination, in the form of discriminatory statements and admissions." *Charleston Town Ctr. Co., LP*, 688 S.E.2d at 921 (quoting *Miles v. M.N.C. Corp.*, 750 F.2d 867, 870 (11th Cir. 1985)). If a plaintiff can, through direct or circumstantial evidence, show that the employer's nondiscriminatory reason for the employment decision is dishonest and a pretext, then discrimination may be inferred. *See Mayflower Vehicle Sys., Inc.*, 629 S.E.2d at 773 (citing *Barefoot v. Sundale Nursing Home*, 457 S.E.2d 152 (W. Va. 1995)).

For example, the plaintiff employee in *Ruckel* brought a disability discrimination claim against the defendant company. 287 F. Supp. 2d at 653–54. The defendant, however, claimed that it terminated the employee "for violating [its] policy concerning work on personal vehicles and for insubordination in doing so after being directed otherwise." *Id.* at 654. The employee drove his mother's car to work to perform work on it. *Id.* at 653. After meeting with his direct supervisor, the employee was warned not to work on "his car," but the employee worked on his mother's vehicle anyway after his supervisor left for the day without seeking any clarification of the directive. *Id.* Even though the plaintiff claimed that he was fired as a result of a physical disability and not for violation of the policy and insubordination, the Court found that there was no basis for a finding of pretext. *See id.* at 565. Consequently, the Court's inquiry ended at the company's "proffered, legitimate reason for [the plaintiff]'s termination." *See id.*

14

This is similar to the case at hand. LabCorp has shown a legitimate, nondiscriminatory reason for terminating Mr. Lindenmuth. His inappropriate interactions with a female co-worker were disrupting the workplace, and LabCorp terminated his employment after multiple warnings were disobeyed. (*See* ECF No. 40-5 at 20; ECF No. 40-3 at 18; ECF No. 40-2 at 8, 9.) Mr. Lindenmuth even acknowledged that he knows he was fired for violating the numerous warnings regarding his fraternization with his fellow employee:

> Q. Could you put two and two together . . . that you had been terminated . . . for violating LabCorp's instruction not to have any personal conversation in the workplace?
> A. Yes . . .
> Q. Is it your understanding that you were terminated from employment . . . for violating LabCorp's directive not to have any personal conversation in the workplace?
> A. Yes . . .
> Q. Then you say in the next sentence, quote, I was fired from my job because of her, because of all this, her word against mine, job conflict, end quote. Did I read that correctly?
> A. Yes.
> Q. When you said, quote, I was fired from my job because of her . . . what did you mean?
> A. That I feel that I was fired because of her.

(ECF No. 40-1 at 51, 67.) LabCorp has demonstrated a legitimate, nondiscriminatory reason for terminating Mr. Lindenmuth, and the above deposition provides evidence that Plaintiff understood and believed that he was fired for that reason. He does not provide conflicting evidence besides cursory statements in his pleadings that he was, in fact, fired due to disability or age. Beyond those statements, there is no evidence to refute LabCorp's legitimate, nondiscriminatory reason for the employment action, and Mr. Lindenmuth cannot meet his burden of showing that the reason is a mere pretext for unlawful discrimination.

In this case, Plaintiff has not shown a "genuine issue as to any material fact" beyond a "mere scintilla of evidence," Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 252, regarding the reason for his termination from LabCorp. None of the evidence provided suggests that LabCorp unlawfully discriminated against him based on disability or age in violation of the WVHRA. Rather, the facts in this case support an entry of summary judgment because Plaintiff did not meet his burden of stating a genuine issue of material fact concerning disability or age discrimination, and he cannot provide evidence that LabCorp's legitimate, nondiscriminatory reason for the termination was a mere pretext. As such, Plaintiff has not established a factual dispute that is material to his case, and summary judgment is appropriate.

## IV. CONCLUSION

For the reasons stated above, LabCorp's Motion for Summary Judgment (ECF No. 40) is **GRANTED**. Accordingly, this case is **DISMISSED** and retired from the docket of this Court.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: September 19, 2016

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE